IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CATHERINE A. COFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:10-1052 |
| | ) | |
| vs. | ) | |
| | ) | Judge Haynes/Bryant |
| ROBERT J. YOUNG COMPANY, INC. | ) | Jury Trial |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
DEFENDANT**

Upon termination, Defendant wrote her a letter that stated "given you are unable to perform the tasks of your job, we have found it necessary to hire someone to fill the vacancy created by your need to take long term disability" and "[d]ue to your long term disability we must terminate your employment." Defendant perceived Plaintiff as disabled following an injury that required surgery and required Plaintiff to use short and long term disability insurance benefits. After receiving notice that Plaintiff was returning to work with minor limitations, Defendant unilaterally determined that she was unable to perform her job and terminated her employment. This adverse action was taken solely as a result of Defendant's discriminatory perception that she was unable to perform her job duties. Indeed, Defendant did not even bother to speak to Plaintiff about her physical limitations, her ability to perform her job, what, if any, accommodations could be made or her return to work. Rather, Defendant just ignored State and Federal law and callously terminated Plaintiff's fifteen (15) year employment. In this case, there is direct evidence that Defendant discriminated against Plaintiff on the basis of her disability. Further, there is no

factual dispute that Defendant's action was discriminatory in violation of Federal and State law. As such, partial judgment as to liability is appropriate.

Accordingly, Plaintiff Catherine Coffman provides this Memorandum of Law in support of her Motion for Partial Summary Judgment against Defendant Robert J. Young Company, Inc. ("RJY" or "Defendant"). Plaintiff moves for summary judgment on liability for violations of the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count I), the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count IV) and retaliation under the Tennessee Public Protection Act, T.C.A. § 50-1-304 ("TPPA), Tennessee common law and the ADA (Count III). Thus, Plaintiff respectfully submits that her motion be granted because no genuine issue of material fact exists as to Defendant's liability on these claims.

## I. UNDISPUTED MATERIAL FACTS

### A. Employment History

Catherine Coffman began her employment with Defendant Robert J. Young Company, Inc. in 1994. Kerry Crotts Dep. 39, July 8, 2011. From 1999 to her termination, Ms. Coffman was employed by RJY as a DMS copy center operator at Earl Swensson. Crotts Dep. 44, Catherine Coffman Dep. 40, July 22, 2011. In her job as DMS copy center operator at Earl Swensson, Ms. Coffman provided customer service, made copies, assisted with machines they were having problems with and repaired them, kept machines stocked with toner and paper, made booklets, printed documents and scanned documents. Coffman Dep. 51, 77. Ms. Coffman's job did not require heavy lifting and she had a cart to deliver paper. *Id.* 78. To date, RJY still has a contract to provide services at Earl Swensson. Mello Dep. 27-29, August 26, 2011. During her employment, Ms. Coffman was the only RJY employee permanently assigned to Earl

Swensson. Coffman Dep. 40. However, at times other employees did work there as needed, including when Ms. Coffman took time off. Crotts Dep. 44; Coffman Dep. 40-42. In the event a DMS copy center operator takes time off, RJY has another employee fill in. Crotts Dep. 45-46. They have employees who float around to fill in for DMS center operators. Crotts Dep. 46. At RJY, Ms. Coffman was highly thought of and a good performer. Crotts Dep. 39; Coffman Dep. 78.

> B.     **Facts Giving Rise to Plaintiff's Disability**

On April 25, 2009, Ms. Coffman had an off duty motorcycle accident while on a motorcycle ministry ride with her church. Coffman Dep. 77. She was transported to Vanderbilt University Medical Center by ambulance and treated for a concussion, injury to her left shoulder, broken collarbone, broken ribs and road rash. Coffman Dep. 73. As a result of the road rash, Ms. Coffman got a staph infection, MRSA [Methicillin-resistant Staphylococcus aureus]. Coffman Dep. 74. As a result of the MRSA, Ms. Coffman's surgery to repair her collarbone was delayed for approximately a month until the infection cleared up. *Id.* Ms. Coffman had surgery to insert a plate in her broken collarbone on May 27, 2009. Statement of Facts ("SOF"), Ex. A. She was required to undergo physical therapy after surgery, but was unable to start the physical therapy for about two and half months while she healed. Coffman Dep. 75. Ms. Coffman's physical therapy was two to three times per week for an hour to an hour and a half. *Id.* 75. While she was receiving physical therapy she was required to take pain medication which affected her ability to drive, among other things. *Id.*

Just after her surgery around July 2009, RJY offered to return Ms. Coffman to work in a sedentary job, but at the time, she only had the use of one arm and she was still suffering ill effects from the concussion and she was physically and mentally unable to return at that time.

3

Coffman Dep. 52-54. Ms. Coffman provided Defendant regular notes as to her medical status and complied with RJY's policies with regards to providing medical documentation following her accident. Crotts. Dep. 48, 110; Coffman Dep. 14. While on medical leave, Ms. Coffman qualified for short term disability insurance benefits and then later long term disability insurance benefits. Crotts Dep. 40, 54. Ms. Coffman's leave that she was required to take in the aftermath of her accident was approved by RJY. Crotts Dep. 60. While on medical leave, Ms. Coffman's position was covered by other RJY employees. Crotts Dep. 49. Ms. Coffman's position was kept open while she was on medical leave. *Id.* 60. Furthermore, her position was not eliminated while she was on leave because RJY had a contract with Earl Swensson to keep that position filled. Crotts Dep. 74.

On October 25, 2009 Ms. Coffman notified Jennifer Sims at RJY verbally that she would be returning to work in November. Crotts Dep. 58-59. After this discussion, Ms. Coffman lost the first note, got another and sent it to RJY on October 28, 2009. Coffman Dep. 15. On October 28, 2009 Ms. Coffman provided RJY a note stating that she would be able to return to work on November 23, 2009 with minimal restrictions of no lifting more than 10 pounds, limited overhead and limited pushing/pulling. Crotts Dep. 58-59; Coffman Dep. 15. Ms. Coffman was prepared to come back to work with the minor restrictions set forth in the October 28, 2009 note. Coffman Dep. 73-74. After submitting the October 28, 2009 note that she would be returning to work, Ms. Coffman talked to her manager Vicky Parris and told her that she would be back on November 23, 2009 and that she was excited to get back to work, get back in the swing of things and move forward with her life. Coffman Dep. 72. Ms. Coffman believed she could perform her job duties as a DMS copy center operator without assistance in accordance with the restrictions articulated on the October 28, 2009 note. Coffman Dep. 78-79. As of October 28, 2009, Ms.

Coffman was on approved leave and her job was kept open. Crotts Dep. 60. RJY did not hire someone to permanently replace Mr. Coffman in her position at Earl Swensson until after she was terminated. *Id.* 84; Coffman 28-29.

### C. Ms. Coffman's Discriminatory and Retaliatory Termination

Kerry Crotts, RJY's HR Director, called Ms. Coffman on November 9, 2009 and informed her that she was being terminated due to her medical restrictions, because she had a doctor's appointment in December and because of her long term disability. Coffman Dep. 30, 70. Ms. Coffman pleaded for her job and even offered to sign a statement that she would not sue the company if she were injured on the job and that she would try to get her physician to lift the restriction. Crotts. Dep. 73, 76; Coffman Dep. 18-19. Ms. Coffman asked if she could come back earlier, if she could keep her job and told Mr. Crotts that she loved her job and that she needed her job. *Id.* 76-77. Mr. Crotts agreed to see if RJY would reconsider based on her pleas, but after speaking wit Mr. Mello, he called her back and stated the company would not reconsider. *Id.* 78-79. On November 10, 2009, Ms. Coffman received a termination letter that stated "given you are unable to perform the tasks of your job, we have found it necessary to hire someone to fill the vacancy created by your need to take long term disability" and "[d]ue to your long term disability we must terminate your employment." SOF Ex. B. Mr. Crotts acknowledged the information contained in the letter was true and correct and contained RJY's reasons for her termination. Crotts Dep. 123-124, 131.

Ms. Coffman immediately filed for unemployment. Ms. Coffman's separation notice submitted by RJY to the Tennessee Department of Labor stated "Employee has been on long term disability, unable to perform duties of the job." Crotts Dep. 98-99, Ex. 9. In response to the TN DOL's inquiry concerning Ms. Coffman's application for unemployment, RJY

acknowledged that she provided a statement showing necessity for leaving work, and RJY also concluded that the condition resulted in a physical disability. Crotts Dep. 105-106, Ex. 11. RJY perceived Ms. Coffman as disabled when it terminated her. Crotts Dep. 99, 106, 131.

The decision to terminate Ms. Coffman was made by Mr. Crotts and Ralph Mello, RJY's general counsel. Crotts Dep. 71; Mello Dep. 13. The decision was based on RJY's assumption that she would not be coming back to work on November 23, 2009. Crotts Dep. 82, 105. RJY made the decision to terminate Ms. Coffman based on the perception that she could not or would not come back to work on November 23, 2009. Crotts Dep. 69, 105. At no point in time before the decision to terminate Ms. Coffman did Mr. Crotts or Mr. Mello discuss with her about her condition or intentions to return on November 23, 2009. *Id.* 69-70, 76, 105; Mello Dep. 24. Prior to her termination, Mr. Crotts did not have any discussions or an interactive conversation with Ms. Coffman to determine whether any of her job functions could be accommodated. Crotts Dep. 74, 75, 105, 129-130. Nor did he discuss her job duties specifically to determine whether or not she could perform her job. *Id.* 84-85. It was RJY's position "that you can either work or you take long term disability because you can't work." Mello Dep. 17.

RJY did not refer to Ms. Coffman's job description to determine if she was in fact unable to perform the duties of her job when she was terminated based on her disability. Crotts Dep. 99. Ms. Coffman's job description did not break down the duties in essential and non-essential functions. *Id.* 103. Moreover, Mr. Crotts, RJY's HR Director was unaware that a breakdown of her job functions into essential and non-essential functions was critical to an accommodation analysis. *Id.* Mr. Crotts did acknowledge that the lifting requirements of Ms. Coffman's job as a DMS copy center operator could have been modified. Crotts Dep. 99-101. After RJY received the October 28, 2009 medical note informing them that Ms. Coffman was released to return on

6

November 23, 2009, RJY did not engage in an interactive conversation with Ms. Coffman to determine whether she would need any accommodations, nor did they request additional medical information from her healthcare providers or consult with an occupational physician to determine whether she would be able to perform her job duties. Crotts Dep. 103-104, 129-130; Mello Dep. 11, 31, 34-35. At no point in time did RJY consider offering Ms. Coffman additional leave from October 28 to November 23, 2009 as a reasonable accommodation. Crotts Dep. 106, 114, 132, 134; Mello Dep. 15. This failure violated RJY's own policy which recognized additional leave a reasonable accommodation. SOF Ex. C. Mr. Crotts acknowledged that it would not have been a hardship on RJY to allow Ms. Coffman to continue to be employed until November 23, 2009. Crotts Dep. 109. Mr. Crotts acknowledged that after Ms. Coffman exhausted her accrued PTO and was receiving long term disability benefits around September 2009, that she was not costing the company anything at that point in time. Crotts Dep. 58. In arriving at the decision to terminate Ms. Coffman, the following factors were not considered by RJY in determining whether it could allow Ms. Coffman to November 23, 2009 to come back to work:

- the impact of the overall financial resources of RJY, Crotts Dep. 114;
- the number of employees at RJY, Crotts Dep. 115-116
- the impact on the center where Ms. Coffman worked, Crotts Dep. 116;
- an individualized assessment of her job, Crotts Dep. 116;
- whether it would cause RJY significant difficulty or expense, Crotts Dep. 117.

RJY based the decision to terminate her on the perception that Ms. Coffman didn't or wouldn't or couldn't come back to work. *Id.* 116. Ms. Coffman was fully released by her doctor from any restrictions in February 2010. Coffman Dep. 32-33, 79-80.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's function is not to determine the truth of the matters asserted, but whether there is a genuine issue for trial. *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

Summary judgment should not be imposed to deny a party an opportunity to present a meritorious claim or defense on his/her "day in court." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). However, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

## III. ARGUMENT

### A. Plaintiff Is Entitled To Summary Judgment on Her ADA and TDA Claims

Under the ADA "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

8

privileges of employment." 42 U.S.C. § 12112(a). The term "disability" means, (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). An individual may establish a disability under any one or more of these prongs. 29 CFR 1630.2(g)(2). The definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Additionally, in amending the ADA, Congress stated: "If an individual establishes that he or she was subjected to an action prohibited by the ADA because of actual or perceived impairment -- whether the person actually has the impairment or whether the impairment constitutes a disability -- then the individual will qualify for protection under the Act." 154 Cong. Rec. at S8842. *See also* 29 C.F.R. §1630.2(j)(1)(iii) (the primary object in cases brought under the ADA should be whether employers have complied with their obligations and whether discrimination occurred, not whether an impairment limits a major life activity which should not demand extensive analysis).

The term "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Providing additional unpaid leave can qualify as a reasonable accommodation. *Cehrs v. NE Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 783 (6th Cir. 1998). The ADA requires the employee and employer to interact in good faith to determine the "precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C. F. R. § 1630.2(o)(3); *Lafata v. Church of Christ Home for the Aged,* 325 F. App'x 416, 422 (6th Cir. 2009). S*ee also Kleiber v. Honda of Am. Mfg., Inc.,*485 F.3d 862, 871 (6th Cir. 2007) ("the interactive process is

9
Case 3:10-cv-01052 Document 38 Filed 10/15/11 Page 9 of 19 PageID #: 297

mandatory, and both parties have a duty to participate in good faith."). Failure to engage in the interactive process can result liability under the ADA if reasonable accommodations would have been possible. *Burress v. City of Franklin,* 2011 U.S. Dist. LEXIS 92668 *41 (M.D. Tenn. August 17, 2011) (**attached**) (citing *Lafata,* 325 F. App'x at 422). Moreover, an employee is not required to use the "magic words" accommodation or disability to trigger the required interactive process, asking for continued employment can be sufficient. *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42.

A physical impairment is "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. §1630.2(h)(1)(2011). The term substantially limits means "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1)(i)-(ii). Major Life Activities mean "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i).

To prove a "regarded as" claim under the ADA, as amended, plaintiff must show she was "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (2009). An impairment that is minor or transitory, having an

10

actual or expected duration of six months or less, does not satisfy the "regarded as" prong. 42 U.S.C. § 12102(3)(B).

To recover on a claim of discrimination under the ADA and TDA a plaintiff must show that she: 1) suffers from a disability as defined by the ADA; 2) is otherwise qualified to perform the requirements of her position, with or without reasonable accommodation; and 3) was discriminated against solely because of her disability.[1] *Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). A plaintiff can establish unlawful discrimination by introducing direct or indirect evidence of discrimination.[2] *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1184 (6th Cir. 1996). Direct evidence includes "evidence that the employer relied upon the plaintiff's disability in making its employment decision." *Monette,* 90 F.3d at 1185-86. Likewise, claims for failure to accommodate are analyzed under the direct evidence framework. *Kleiber,* 485 F.3d at 868-869. To prove a claim of discrimination under the ADA and TDA using direct evidence, a plaintiff must show that she: 1) is disabled; 2) is otherwise qualified to perform the requirements of her position despite her disability, a) without accommodation, b) with an essential job requirement eliminated or c) with a proposed reasonable accommodation; and 3) the employer bears the burden of proving the a challenged job criterion is essential and a business necessity or that a proposed accommodation will impose and undue hardship. *Monette,* 90 F.3d at 1186.

---

[1] The Tennessee Supreme Court looks to federal law for guidance in enforcing the state's anti-discrimination laws-- the TDA and the THRA. *Baker v. Windsor Republic Doors*, 2011 U.S. App. LEXIS 4810 *17, n.4 (6th Cir. Mar. 8, 2011) (citing *Barnes v. Goodyear Tire & Rubber Co.,* 48 S.W.3d 698, 705 (Tenn. 2000)). *See also Sasser v. Quebecor Printing (USA) Corp.,* 159 S.W.3d 579, 584 (Tenn. Court App. 2004)(TDA claims are analyzed under the same principles as the ADA). The only difference in the two statutes is that the TDA does not contain a "reasonable accommodation" element. *Burress,* 2011 U.S. Dist. LEXIS 92668 *54.

[2] Distinguishing between cases that involve direct and indirect evidence is "vital" because the framework for the two kinds of cases is different. *Monette,* 90 F.3d at 1184.

11

In this case, there is ample direct evidence that Plaintiff was discriminated against on the basis of her disability.

### 1. Plaintiff was Disabled

Under the first prong of the direct evidence analysis Ms. Coffman must show that she is disabled as defined by the ADA. *Monette,* 90 F.3d at 1186. In the instant case there is ample evidence that Defendant regarded Plaintiff as disabled and that she was disabled as defined by the ADA.

#### a. Defendant Regarded Plaintiff as Disabled

Defendant stated in no uncertain terms that Plaintiff was terminated due to her disability. Crotts Dep. 98-99, Ex. 9, 105-106, Ex. 11, 123-124, 131. Defendant stated this in Plaintiff's termination letter and in the information it submitted to the Tennessee Department of Labor. *Id*. Additional undisputed evidence that Defendant regarded Ms. Coffman as disabled is evidenced by Defendant's mistaken belief Ms. Coffman could not or would not work. Crotts Dep. 69, 105. Further, because Ms. Coffman's impairment lasted longer than six months, it met the requirements of the ADA that it be neither minor or transitory. Crotts Dep. 58-59 (Ms. Coffman was released to return to work 8 months after her initial impairment). 42 U.S.C. § 12102(3)(B). Indeed, the fact that her impairment lasted longer than six months was one of the reasons Defendant terminated her. Coffman Dep. 30, 70. Moreover, Defendant's general counsel's statement that "you can either work or you take long term disability because you can't work" conflates an employer's responsibilities under the ADA and what an insurance company will cover, but nonetheless objectively indicates that RJY viewed Ms. Coffman as disabled. Mello Dep. 17. *See Cleveland v. Policy Management System Corp.,* 526 U.S. 795, 802 (1999) (holding that approval for SSDI did not disqualify an employee from an ADA claim because SSDI

12

qualification did not take into account whether someone could do their work with a reasonable accommodation). Such a mistaken view is further direct evidence that Defendant regarded Ms. Coffman as disabled simply because she qualified for disability insurance benefits. *See Burress,* 2011 U.S. Dist. LEXIS 92668 *36-37 (supervisor's letter terminating employee's employment based on receipt of long term disability benefits was direct evidence of discrimination). Accordingly, there is no factual dispute that Defendant regarded Ms. Coffman as disabled.

### b. Plaintiff had a Physical Impairment

As a result of her accident, Ms. Coffman suffered from a severe infection, multiple broken bones and a concussion. Coffman Dep. 73-75. These facts establish Ms. Coffman had a physical condition which affected one or more body systems, including the neurological, musculoskeletal systems and skin. 29 C.F.R. §1630.2(h)(1). As such, she was, at minimum, significantly restricted in the activity of working and performing manual tasks. 29 C.F.R. §1630.2(i). In particular, the undisputed testimony is that she was unable to work for several months, she suffered ill effects from the concussion for months and she was unable to have the full use of her arms for over six months. Coffman Dep. 52-54, 73-75.

### 2. Plaintiff was Qualified to Perform the Requirements of Her Position

To meet the second prong of the analysis, the undisputed facts demonstrate that Ms. Coffman was otherwise qualified to perform the requirements of her position with a proposed reasonable accommodation to come back on November 23, 2009 and as recognized as such in Defendant's ignored policy. SOF, Ex. C. *Monette,* 90 F.3d at 1186; *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42. Plaintiff simply requested to return to her position on November 23, 2009. Crotts Dep. 58-59, Ex. 5, Coffman Dep. 15. This request was a perfectly reasonable request for an accommodation. *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42 (a request to return to work is

13

a request for an accommodation triggering the interactive process). Moreover, Plaintiff requested very minor accommodations in terms of lifting and pushing, which would not have impacted her ability to perform her job duties. Coffman Dep. 18, Crotts Dep. 99-101. In response, Defendant failed to engage in an interactive conversation and terminated her employment upon the mistaken and discriminatory belief that she would not or could not come back to work. Crotts Dep. 69, 74-75, 82, 105, 129-130. In bypassing the interactive conversation requirement of the ADA, Defendant further failed to make any effort to determine if Plaintiff could come back sooner than her November 23, 2009 release date; if she needed additional accommodations to perform her job, like the minor restrictions that her physician recommended; or if she even intended to come back. Instead it made the leap that "due to [her] long term disability" she was unable to work. *Id.* Nonetheless, the undisputed facts indicate Ms. Coffman could have performed her job duties in November 2009, if not sooner, with or without reasonable accommodation. Coffman Dep. 78-79; Crotts Dep. 58-59, Ex.5, 99-101.

### 3. Defendant Cannot Demonstrate Business Necessity or Undue Hardship

RJY bears the burden of proving that the medical restrictions set forth in the October 28, 2009 note were essential and that it was a business necessity that Ms. Coffman return to work before November 23, 2009, or that the proposed accommodation of returning on November 23, 2009 with minor restrictions would impose an undue hardship. *Monette,* 90 F.3d at 1186. The EEOC guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (EEOC Oct. 22, 2002) and the Code of Federal Regulations provide guidance on several factors that should be considered in making an undue hardship determination. Online at http://www.eeoc.gov/policy/docs/accommodation.html. 29 C.F.R. §1630.0(p)(2)(i)-(v). They include:

- o the nature and cost of the accommodation needed;
- o the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; the effect on expenses and resources of the facility;
- o the overall financial resources, size, number of employees, and type and location of facilities of the employer (if the facility involved in the reasonable accommodation is part of a larger entity);
- o the type of operation of the employer, including the structure and functions of the workforce, the geographic separateness, and the administrative or fiscal relationship of the facility involved in making the accommodation to the employer;
- o the impact of the accommodation on the operation of the facility.

Defendant admitted that it would not have been a hardship on it to allow Ms. Coffman to continue to be employed until November 23, 2009. Crotts Dep. 109. Defendant also admitted that it would not have been an undue hardship to allow Ms. Coffman until November 23, 2009 to return to work. *Id.* In particular, applying factors suggested by the EEOC and as set forth in the Code of Federal Regulations, Defendant admitted:

- after Ms. Coffman exhausted her accrued PTO and was receiving long term disability benefits around September 2009, that she was not costing the company anything at that point in time, Crotts Dep. 58;

- it did not consider the impact of the overall financial resources of RJY in determining whether it could allow Ms. Coffman to November 23, 2009 to come back to work, Crotts Dep. 114;

- it did not consider the number of employees at RJY in determining whether to allow Ms. Coffman until November 23, 2009 to come back, Crotts Dep. 115-116;

- it did not consider the impact on the center where Ms. Coffman worked in determining whether it could allow Ms. Coffman to November 23, 2009 to come back to work, Crotts Dep. 116;

- it did not base its decision in determining whether it could allow Ms. Coffman to November 23, 2009 to come back to work on an individualized assessment of her job, Crotts Dep. 116; and

- it did not consider whether it would cause RJY significant difficulty or expense in determining whether it could allow Ms. Coffman to November 23, 2009 to come back to work. Crotts Dep. 117.

Thus, it is undisputed the Defendant did not take into consideration the undue hardship factors.[3] As such, Defendant will be unable to establish a defense of undue hardship, or any defense, for that matter.

Therefore, the undisputed direct evidence establishes that it discriminated against Plaintiff on the basis of her disability or regarded her as disabled and that this discrimination was the sole basis for her unlawful termination.

**B.     Defendant Terminated Plaintiff in Retaliation for Engaging in Protected Conduct.**

It is unlawful for an employer to retaliate against an employee who engages in protected activity under the ADA. 42 U.S.C. §12203(a). In order to prove ADA retaliation, a plaintiff is required to establish "that [she] engaged in protected activity; that the exercise of [her] civil rights was known by the defendant; that defendant thereafter took adverse employment action; and that a causal connection exists between the protected activity and the adverse employment action." *Walborn v. Erie Cnty. Care Facility,* 150 F.3d 584, 588-89 (6th Cir. 1998). A protected act can be the showing of a good faith request for a reasonable accommodation. *Bryson v. Regis,*

---

[3] In addition to the undisputed admission that Defendant's HR director did not take into account these factors, he also admitted that he had never had specific or general training on the ADA and that he had not reviewed the EEOC guidance on reasonable accommodations. Crotts Dep. 32.

*Corp.*, 498 F.3d 561, 577 (6th Cir. 2007); *Baker v. Windsor Republic Doors,* 414 F. App'x 764, 776-777 n.8 (6th Cir. 2011) (**attached**).

The TPPA provides that no employee shall be discharged solely for refusing to participate in or to remain silent about illegal activities. TCA § 50-1-304(a). "Illegal activities" include state and federal criminal and civil violations, as well as violation of any regulation affecting public health, safety, and welfare. TCA § 50-1-304(c). To prevail under the TPPA, the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, "illegal activities" as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination. *Franklin v. Swift Transp. Co., Inc.,* 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006).

The elements required in order to prove a common law retaliatory discharge claim are similar to a TPPA claim; the plaintiff must show (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy. *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d at 528. The primary difference between the common law and statutory claims is that, to benefit from statutory protection, an employee must demonstrate that his or her refusal (to participate in or to remain silent about illegal activities) was the *sole* reason for his or her discharge. TCA § 50-1-304(a); *Guy v. Mut. of Omaha Ins. Co.,* 79 S.W.3d 528, 535-37 (Tenn. 2002).

17

In this case, Plaintiff clearly sought the accommodation of additional leave to address her medical conditions. Crotts Dep. 58-59, Ex.5. However, when she requested to return to work with minor restrictions which would have required very minor accommodations, if any, she was terminated. Coffman Dep. 30, 70. These actions are protected activities under the ADA, TPPA and Tennessee common law. *Anderson v. Standard Register Co.*, 857 S.W.2d at 558. *Franklin v. Swift Transp. Co., Inc*. 210 S.W.3d at 528. There is direct evidence, as set forth in Defendants' termination letter, that Plaintiff was being terminated for engaging in the protected activity of requesting an accommodation. Ex. B; Crotts Dep. 123-124, 131. Accordingly, Defendant violated the ADA, TPPA and Tennessee common law when it terminated Plaintiff for requesting a reasonable accommodation.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for partial summary judgment and enter judgment in Plaintiff's favor on her claims under the Tennessee Disability Act, T.C.A. § 8-50-103 (Count I), the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA")(Count IV) and retaliation under the Tennessee Public Protection Act, T.C.A. § 50-1-304 ("TPPA), Tennessee common law and the ADA (Count III).

Respectfully submitted,

*s/ Heather M. Collins*
Heather Moore Collins (#26099)
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615)724-1996
(615)691-7019 (FACSIMILE)
heather@hmcollinslaw.com

*Attorney for Plaintiff*

18

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing has been filed this 15th day of October, 2011 with the United States District Court, Middle District of Tennessee by using the CM/ECF system and notice of such electronic filing will be electronically mailed to Attorney for Defendant, Ralph Mello, 809 Division Street, Nashville, TN 37203 at rmello@nashvillelaw.com.

      */s/ Heather Moore Collins*
      Heather Moore Collins