

**DOUGLAS BAKER, Plaintiff-Appellee/Cross-Appellant, v. WINDSOR REPUBLIC DOORS, Defendant-Appellant/Cross-Appellee.**

**Nos. 08-6200/09-5722/09-6553**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**11a0136n.06**; *414 Fed. Appx. 764*; *2011 U.S. App. LEXIS 4810*; *2011 FED App. 0136N (6th Cir.)*; *24 Am. Disabilities Cas. (BNA) 791*

**March 8, 2011, Filed**

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PRO-CEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Magistrate's recommenda-tion at *Baker v. Windsor Republic Doors, 2011 U.S. Dist. LEXIS 70311 (W.D. Tenn., May 18, 2011)*

**PRIOR HISTORY:**  [**1]
   ON APPEAL FROM THE UNITED STATES DIS-TRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE.
*Baker v. Windsor Republic Doors, 2009 U.S. Dist. LEXIS 37176 (W.D. Tenn., May 1, 2009)*
*Baker v. Windsor Republic Doors, 2009 U.S. Dist. LEXIS 69870 (W.D. Tenn., Aug. 10, 2009)*
*Baker v. Windsor Republic Doors, 635 F. Supp. 2d 765, 2009 U.S. Dist. LEXIS 61031 (W.D. Tenn., 2009)*

**COUNSEL:** For DOUGLAS BAKER (08-6200), Plain-tiff - Appellee Cross-Appellant: Justin Scott Gilbert, Gilbert Russell McWherter, Jackson, TN.

For WINDSOR REPUBLIC DOORS, Defendant - Ap-pellant Cross-Appellee: David A. Campbell, III, Charles Franklin Billington, III, Vorys, Sater, Seymour & Pease,

Cleveland, OH; George Ross Bridgman, Vorys, Sater, Seymour & Pease, Columbus, OH.

For EQUAL EMPLOYMENT OPPORTUNITY COM-MISSION, Amicus Curiae: Anne Noel Occhialino, Donna J. Brusoski, U.S. Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC.

For DOUGLAS BAKER (09-5722), Plaintiff - Appellee Cross-Appellant: Justin Scott Gilbert, Gilbert Russell McWherter, Jackson, TN.

For WINDSOR REPUBLIC DOORS, Defendant - Ap-pellant Cross-Appellee: Charles Franklin Billington, III, David A. Campbell, III, Vorys, Sater, Seymour & Pease, Cleveland, OH; George Ross Bridgman, Vorys, Sater, Seymour & Pease, Columbus, OH.

For EQUAL EMPLOYMENT OPPORTUNITY COM-MISSION, Amicus Curiae: Anne Noel Occhialino, Donna J. Brusoski, U.S. Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC.

For DOUGLAS  [**2] BAKER (09-6553), Plaintiff - Appellee: Justin Scott Gilbert, Gilbert Russell McWher-ter, Jackson, TN.

For WINDSOR REPUBLIC DOORS, Defendant - Ap-pellant: Charles Franklin Billington, III, David A. Campbell, III, Vorys, Sater, Seymour & Pease, Cleve-land, OH; George Ross Bridgman, Vorys, Sater, Sey-mour & Pease, Columbus, OH.

Case 3:10-cv-01052   Document 38-2   Filed 10/15/11   Page 1 of 14 PageID #: 324

Page 2

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

**JUDGES:** Before: DAUGHTREY, GILMAN, and McKEAGUE, Circuit Judges.

**OPINION BY:** MARTHA CRAIG DAUGHTREY

**OPINION**

[*765] MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Douglas Baker filed suit against his employer, Windsor Republic Doors, alleging violations of the Americans with Disabilities Act (ADA or the Act), *42 U.S.C. §§ 12101--12213*, [*766] the Tennessee Human Rights Act (THRA), *Tenn. Code Ann. §§ 4-21-101 -- 1004*, and the Tennessee Handicap Act (THA), *Tenn. Code Ann. § 8-50-103 -- 104*. [1] Following a four-day jury trial that resulted in a verdict for the plaintiff and various post-trial rulings by the district court, the parties filed three appeals that have now been consolidated for review. In appeal number 08-6200, Windsor Republic challenges the jury's verdict in favor of Baker on his retaliation claim, the denial of Windsor Republic's motion for a new trial, the award of compensatory damages to Baker, the [**3] denial of the defendant's request for attorneys' fees, and the district court's refusal to reduce the amount of attorneys' fees awarded to the plaintiff. In appeal number 09-5722, Baker cross-appeals, alleging error in the district court's post-trial determination that a plaintiff who is "regarded as" disabled is not entitled to reasonable accommodations by his employer. In appeal number 09-6553, Windsor Republic contests the district court's grant of supplemental attorneys' fees to Baker. Because we find no reversible error in connection with any of the issues raised in these appeals, we affirm the judgment of the district court in all respects.

> 1 Effective April 7, 2008, the Tennessee Handicap Act was renamed the Tennessee Disability Act. *See Tenn. Code Ann. § 8-50-103(a).*

**FACTUAL AND PROCEDURAL BACKGROUND**

In attempting to resolve the defendant's post-trial motions for judgment as a matter of law and for a new trial, the district court expertly summarized the relevant facts that are also germane to many of the issues now before this court:

> WRD [(Windsor Republic Doors)] manufactures hollow steel doors and metal frames. The Plaintiff has worked at WRD's manufacturing plant in McKenzie, [**4] Tennessee since July 7, 1985. Baker most recently held the position of forklift operator, and his primary duties involved

transporting doors from the assembly line to the paint line on a forklift, while traveling through aisles approximately ten to twenty feet wide. A collective bargaining agreement between WRD and the United Steelworkers of America Local Union 8915 governed the terms of Plaintiff's employment.

Baker suffered from an enlarged heart that caused dilated cardiomyopathy with symptoms of fatigue and shortness of breath. In September 2005, he took a leave of absence to have a pacemaker and defibrillator installed so as to curtail rhythm irregularities and prevent heart failure. During his leave, he received short-term disability pay for six months, but all pay and benefits ceased after that period.

On November 3, 2005, Baker submitted to WRD a medical form, which provided that, beginning January 9, 2006, he could return to work and "resume activities as tolerated." This return-to-work slip listed no restrictions and was supported by a recommendation for work resumption by Dr. Adey Agbetoyin, Baker's cardiologist. WRD also received a brochure issued by Medtronic, the medical [**5] technology company that manufactured Baker's pacemaker. This brochure, entitled "Electronic Interference and the Work Site," stated in part:

> "The majority of work environments will not alter Medtronic implantable device operation[,][but] some industrial environments or equipment produce high intensity EMI [electromagnetic interference] that may present a potential risk to the implanted device . . . . An evaluation [*767] of the work site regarding EMI may be necessary in determining if a patient can resume work . . . . Medtronic Technical Service consultants are available to work with the physician and employer to determine the level of evaluation or testing needed. Some environments can be evaluated through conversations with a Technical Service Consultant and the employer. On occasion, it may be necessary to continue the evaluation by having an environmental consultant perform testing at the worksite[,] [which] should be done by qualified individuals with proper EMI

Page 3

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

testing equipment . . . . We can provide technical assistance to the environmental consultant or employer in interpreting test results and answering questions regarding EMI and possible device interactions."

This document laid [**6] out EMI thresholds for the pacemaker at 5Gs [(gausses)]. It also stated that extremely high intensity fields could disrupt the operation of the pacemaker.

Larry Land, WRD's director of human services, conducted what he referred to as the "accommodation review process" with regard to Baker. Land explained this as a process whereby all employees returning from medical leave had their restrictions evaluated, and WRD then determined whether the restrictions could be accommodated in the workplace. After reviewing Baker's return-to-work slip, Land was concerned by some of the language in Medtronic's pacemaker brochure. However, neither Land nor any other WRD employee ever called Medtronic's technical service consultants for assistance or had an environmental test conducted by a qualified EMI expert in the workplace. Land spoke with Jason Lowery, an engineer working at WRD, but he was not qualified to determine whether the EMI at the facility might affect Baker's pacemaker. Lowery did, however, compile a list of the voltages of the various electrical devices around the plant.

On January 4, 2006, Land sent a letter to Dr. Agbetoyin stating, "Unfortunately we cannot allow Mr. Baker to return [**7] to work until we hear from you as to whether or not his return to work would cause him physical harm," and inquired as to whether Baker's condition necessitated restrictions. The letter listed potential sources of EMI in the plant, including a paint booth, resistance welders, fluorescent lights, high bay lighting, and microwave ovens, along with their respective voltage measurements. Land was concerned that these devices might affect Baker's pacemaker and perhaps cause him injury from "the slightest physical harm to death." Land also sent Dr. Agbetoyin literature describing the Meditronic [sic] pacemaker, and inquired of the physician as to whether

WRD's manufacturing plant might create unique risks for Baker due to the presence of electronic equipment. On March 1, 2006, Land sent another letter to Dr. Agbetoyin, requesting more information about the pacemaker and stating that "[m]ost of the other jobs available [at the plant] require more physical exertion than [Baker's] current job and all other jobs in the location will have some exposure to the electrical sources referenced above."

In response to Land's letters, on March 30, 2006, Dr. Agbetoyin replied by recommending that Baker [**8] return to work with restrictions, which included avoiding "contact with any electrical current or magnetic fields." Dr. Agbetoyin also noted that the labor union, of which Baker was a member, had worked out a route where he could operate his forklift in order to avoid dangerous magnetic fields. Though not mentioned in his letter [*768] to Land, Dr. Agbetoyin later clarified that he thought Baker could also benefit from using an electromagnetic frequency alarm ("EMF alarm"), which is a device that emits an audible warning when one is in proximity to EMI. In his video deposition, Dr. Agbetoyin explained by saying:

"In my medical opinion, I felt that [Baker] should be able to-to return to work as long as he was wearing an EMF alarm, which I feel should alarm in the presence of high electromagnetic fields. In addition . . . we were going to keep monitoring the device and would do . . . follow-up visits to determine if there was any effect or malfunction from his daily activities."

On April 13, 2006, Land sent Dr. Agbetoyin a third letter that noted Baker's duties involved frequent exposure to EMI and provided a map illustrating Baker's driving route and locations where EMI had been detected in [**9] its facility. Land requested that Dr. Agbetoyin personally visit its manufacturing site, but received no response from the doctor regarding that invitation.

WRD later purchased an EMF alarm and instructed one of its employees to walk through the areas where Baker's job

routinely required him to travel. Additionally, the Plaintiff's labor union attempted to design a route in which Baker could operate the forklift while avoiding magnetic fields, though apparently this "safe route" was never completed. On June 6, 2006, Land contacted Baker -- over the phone and by letter--and told him that he did not consider the EMF alarm a "reasonable accommodation" because he believed Baker would have difficulty hearing or seeing the alarm over the noise pollution in the facility. However, Land's letter also stated that "[t]he company believe[d] that it [had] found a solution to the issue and the purpose of this letter [was] to set forth the company's action to this point in the process and [Baker's] alternatives in moving forward." The "solution" offered was for Baker to waive his rights to workers' compensation benefits arising from injury caused by heart disease, heart attack, or coronary failure or [**10] occlusion. Land indicated that further delay would result if Baker declined to waive his workers' compensation rights because the company would be in "the state of unknown whether or not [returning to work] would cause him physical harm." Baker did not agree to the workers' compensation waiver because he was worried that, if he suffered a heart-related injury at work, he would have no statutory benefits and no insurance coverage.

As of the trial, WRD had not given Baker the option of returning to work without waiving his rights under Tennessee's workers' compensation laws. Baker has indicated to WRD that he wishes to return to work, with or without the EMF alarm, though he refuses to do so without workers' compensation coverage. Since June 2006, Baker claims he has inquired into about fifty different positions in several surrounding counties but has yet to obtain new employment. During this period of unemployment, he has sold some personal items and borrowed money from his father, friends, and three different banks in order to avoid foreclosure on his home. Baker said that his financial situation has forced him to tears on occasion, damaged his relationship with his son and the rest [**11] of his family, and made

him feel "like a burden and a bum to everybody."

Prior to trial, WRD instructed its employee, Jack Fields, to inspect its plant with a gauss meter. Fields recorded sixteen areas where the meter registered [*769] greater than 5 Gs. At one point, the meter registered 200 Gs at the edge of an aisle where Baker's forklift would routinely pass, and Fields found other exceptionally high readings around the break room and bathroom.

At the conclusion of the trial, the jury returned a verdict finding that the Plaintiff had been regarded as disabled, was a qualified individual, was not provided reasonable accommodation under the ADA or THA, and had suffered retaliation. The jury awarded him $84,000 in back pay and $29,500 in compensatory damages. The Court entered a judgment against the Defendant in the amount of $113,500, pursuant to the jury's verdict, and ordered WRD to reinstate the Plaintiff with reasonable accommodations.

*Baker v. Windsor Republic Doors, No. 1:06-cv-01137, 2009 U.S. Dist. LEXIS 37176, 2009 WL 1231035, at *1-4 (W.D. Tenn. May 1, 2009)* (footnotes and internal citations to the trial record omitted).

Two weeks after entry of the district court's judgment, Windsor Republic filed a motion for [**12] entry of judgment as a matter of law, arguing that settled Sixth-Circuit law foreclosed Baker's reasonable-accommodation claim, that the plaintiff was never "qualified" to return to work, that a medical leave-of-absence is in fact a reasonable accommodation, and that the plaintiff failed to offer sufficient evidence of retaliation for his exercise of a protected right. Even prior to receiving a ruling on the motion, however, Windsor Republic filed a notice of its appeal from that judgment.

Plaintiff Baker, relying upon his "prevailing party" status, then moved the district court for an award of attorneys' fees and expenses, a motion that was granted three months later. In awarding Baker's counsel $167,782.50 in fees, the magistrate judge to whom the fee motion was assigned concluded that the hourly rates for services charged by the plaintiff's three attorneys were reasonable. [2] The magistrate judge further determined both that the documentation provided by counsel supported their contention regarding the number of hours

Page 5

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

they expended on Baker's case and that the submitted hourly total was reasonable. Finally, noting that Baker "prevailed on all of his claims under the ADA and THA/THRA," [**13] that he obtained all requested relief, and that "ADA cases are notoriously difficult to win," the magistrate judge multiplied the lodestar fee amount by a factor of 1.2 and stated "that a reasonable attorney award in this case is $167,782.50."

> 2 The approach for determining an attorneys'-fee award "whereby the court multiplies a reasonable hourly rate by the proven number of hours reasonably expended on the case by counsel" is known as the lodestar approach. *Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004).*

Four months after the magistrate judge's award of attorneys' fees, the district judge filed a thorough and detailed opinion granting in part and denying in part Windsor Republic's earlier motion pursuant to *Federal Rule of Civil Procedure 50* for judgment as a matter of law. In that ruling, the court first noted that the evidence presented at trial supported the jury's finding that the defendant company regarded Baker as disabled and "unable to perform a 'broad class of jobs.'" But, the district judge concluded, in light of binding Sixth-Circuit precedent, the defendant was not required to provide reasonable accommodation for the perceived disability of an employee only "regarded [**14] as" disabled. Consequently, the court granted judgment as a matter of law to Windsor Republic on the reasonable-accommodation claim. The district judge nevertheless upheld the jury verdict in [*770] favor of Baker on the retaliation claim and the earlier conclusions that the plaintiff was entitled to both back pay and compensatory damages for such a cause of action. Correcting a computational error, however, the court reduced Baker's back-pay award from $84,000 to $58,756.54.

Windsor Republic responded to the district court's ruling by filing two additional motions. The first motion, pursuant to *Rule 59 of the Federal Rules of Civil Procedure*, sought to overturn the jury's verdict on Baker's retaliation claim and to reduce the award of attorneys' fees to the plaintiff's counsel in light of the court's ruling that the jury's verdict on Baker's reasonable-accommodation claim was improper. In the second motion, Windsor Republic petitioned for its own award of attorneys' fees "based on the fact that . . . Defendant is the prevailing party on Plaintiff Douglas Baker's . . . reasonable accommodation claim." The district court denied both motions in a single order, prompting the plaintiff to seek [**15] supplemental attorneys' fees in the amount of $27,532.50 "for the year of litigation after the trial." The magistrate judge assigned to resolve the

motion determined that the request was reasonable and thus granted the motion for supplemental fees.

Both Baker and Windsor Republic filed amended notices of appeal with the district court. In those filings, the parties--not surprisingly--challenge those portions of the numerous district-court rulings that were adverse to their respective positions.

## DISCUSSION

### Discrimination Claim

In one of his two claims brought before the district court, Baker argued that he was entitled to damages from his employer because Windsor Republic regarded him as disabled yet failed to provide reasonable accommodations to allow him to perform his job as a forklift operator. The jury agreed with the plaintiff, specifically finding that the defendant regarded Baker as disabled, that Baker was qualified to perform the job for which he was hired, and that Windsor Republic nevertheless failed to provide reasonable accommodation to Baker. Subsequently, however, the district court granted judgment to Windsor Republic notwithstanding the jury verdict, ruling that Sixth-Circuit [**16] case law excused an employer from the necessity of accommodating a plaintiff who was not actually disabled, but rather was only "regarded as" having a disability. Baker now challenges that determination.

At the time Baker filed his complaint with the district court, the ADA prohibited discrimination by employers like Windsor Republic "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *42 U.S.C. § 12112(a).* [3] Consequently, in order to prevail on his ADA claim, the plaintiff was required to establish "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability. The third element requires that the plaintiff suffer an adverse employment action." *Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir.* [*771] *2008)* (citations and internal quotation marks omitted). [4]

> 3 Effective January [**17] 1, 2009, *section 12112(a)* was amended by striking the words "with a disability because of the disability of such individual" and replacing them with the phrase "on the basis of disability." *See* Pub. L. 110-325, § 5(a), 122 Stat. 3557 (Sept. 25, 2008). The sta-

Page 6

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

tutory change does not affect the analysis of the issue presented on appeal by Baker.

4    The Tennessee Supreme Court has determined that it also will look to federal law for guidance in enforcing the state's anti-discrimination laws--the THA and the THRA. *See Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000), abrogated in part by Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010)* (disapproving the use of the burden-shifting analysis of *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), at the summary judgment stage* of retaliatory discharge cases). As a result, this court's analysis of either federal or Tennessee law will be the same in this case.

The ADA defines "disability" to mean: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *42 U.S.C. § 12102(2)*. [**18] [5] Given this definition, there should be no real dispute that Baker is "disabled" for purposes of the Act. Yet, Windsor Republic continues to insist that the plaintiff does not satisfy the standard required to establish the first of the three prongs of an ADA claim. The jury's verdict form stated unequivocally, however, that the jury determined that Windsor Republic "regarded Plaintiff as 'disabled'"; consequently, only that one subsection of the definition of "disability" is applicable to this court's deliberative process on appeal.

5    *Section 12102* of title 42 was amended in 2008, effective January 1, 2009, to move the definition of "disability" to subsection (1) of the provision and to add to subpart (C) the words "(as described in paragraph (3))." Pub. L. 110-325, § 4(a),122 Stat. 3553 (Sept. 25, 2008). After January 1, 2009, *42 U.S.C. § 12102(3)* now reads:

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits [**19] or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

The regarded-as-disabled prong of the ADA comes into play when an employee is "'perfectly able' to perform a job, but [is] 'rejected . . . because of the "myths, fears and stereotypes" associated with disabilities.'" *Gruener v. Ohio Cas. Ins. Co., 510 F.3d 661, 664 (6th Cir. 2008)* (citing *Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir. 2001))*. Thus, the concept is applicable when "(1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities." *Sutton v. United Air Lines, Inc, 527 U.S. 471, 489, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999), abrogated by statute*, ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553,, *on other grounds*. Through regulation, the Equal Employment Opportunity Commission (EEOC) has defined "regarded as having such an impairment"  [**20] as a situation in which an employee:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined [elsewhere in the regulation] but is [*772]  treated by a covered entity as having a substantially limiting impairment.

*29 C.F.R. § 1630.2(/)*.

In advancing its argument that Baker cannot be "regarded as" disabled, Windsor Republic focuses on the language in *Gruener* that emphasizes the necessity that an employer "entertain[] misperceptions" about the employee's physical or mental condition before it can be considered to have regarded that employee as disabled. *Gruener, 510 F.3d at 665*. Because Windsor Republic claims that it was simply following the recommendations

Page 7

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

of Baker's physician in refusing to allow the plaintiff to return to his job, the defendant continues to maintain that it has done nothing wrong in this matter. *See, e.g., id.* (employer's "understanding of [Gruener's] impairments and how they [**21] limited her simply tracked the specific and valid restrictions prescribed by her own doctor").

Windsor Republic, however, mischaracterizes the testimony of Baker's treating physician. Far from stating that Baker was unfit to return to work with his implanted pacemaker, Dr. Agbetoyin provided the following testimony:

> In my medical opinion, I felt that he should be able to -- to return to work as long as he was wearing an EMF alarm . . . . In addition obviously he was -- he is my patient, and we were going to keep monitoring the device and would do actually at [sic] follow-up visits to determine if there was any effect or malfunction from his daily activities.

> [It is n]ot necessarily [true that if the alarm were to go off, he couldn't work in the area where the alarm went off.] We would have to again--and that's why I said one day if he were to return to work, we would bring him back and re-interrogate the device because we have to see what specific effect, if any, the device has on him. I mean, people who wear these devices go through those airport check-in things with that -- that -- there are precautions but not contraindications.

Thus, Windsor Republic was not simply relying on medical advice [**22] in prohibiting Baker's unfettered return to work but, rather, was giving effect to its own motivations. In light of the definitions provided by relevant decisional precedent and by applicable regulations, therefore, the defendant did indeed regard Baker as disabled, thus establishing the first element of the plaintiff's ADA case.

At first blush, it would appear that there is little dispute that Baker also established the third element of his discrimination cause of action by demonstrating that any mistreatment he suffered was solely because of his "disability." Indeed, the defendant offers no possible rationale or justification for not allowing Baker to return to his forklift-operator job other than the plaintiff's medical condition. As stated previously, however, this "third element requires that the plaintiff suffer an adverse employment action," *Talley, 542 F.3d at 1105*, and Windsor

Republic adamantly argues that no such adverse action has been taken by the company. To buttress its position, the defendant contends that Baker was not actually barred from returning to work. Instead, the company emphasizes that the plaintiff could have returned to his old position if he had simply agreed [**23] to waive any future workers' compensation claim relating to the aggravation of his existing heart condition. Requiring an employee with a heart condition to waive workers' compensation benefits otherwise available to non-disabled employees, however, smacks of exactly the type of discrimination that the ADA seeks to prevent.

Nevertheless, Windsor Republic suggests that exacting a waiver of workers' compensation benefits from the plaintiff [*773] cannot be considered an adverse action because *section 50-6-307(b) of the Tennessee Code Annotated* allows for just such a waiver, and complying with the terms of a state statute cannot be considered "adverse." Pursuant to the terms of the legislation:

> When an employee or prospective employee has a prior history of heart disease, heart attack or coronary failure or occlusion, the employee or prospective employee may be permitted to waive in writing compensation from the employee's or prospective employee's employer or future employer for claims growing out of an aggravation or repetition of the condition, the waiver to be evidenced by filing with the administrator a written instrument to which shall be attached a copy of a medical statement giving the [**24] prior history of the condition, and in all those cases claims for workers' compensation benefits growing out of an aggravation or repetition of the condition by the employee or the employee's dependents shall be barred.

*Tenn. Code Ann. § 50-6-307(b).*

However, *§ 50-6-307(b)* was enacted decades prior to the passage of the ADA. Furthermore, as recognized by the Tennessee Supreme Court:

> The purpose of this amendment was to enable employees with a history of heart trouble to be employed when otherwise industry would not put them to work because of the potential claim of further disability from a recurrence of the heart trouble. This is a salutary amendment to the compensation act designed to aid in

Page 8

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

the employment of those who are handi-
capped in obtaining employment by rea-
son of a prior history of heart disease or
heart attack. It is a matter of common
knowledge that most employers in indus-
try require a physical examination as a
prerequisite to employment and that those
with a history of heart disease or heart at-
tack have difficulty in obtaining employ-
ment because of their susceptibility to
further heart difficulty.

*Modem Upholstered Chair Co. v. Henry, 213 Tenn. 475,
376 S.W.2d 441, 444 (Tenn. 1964).*

After [**25] passage of the ADA, qualified work-
ers with a history of heart disease no longer need the
"protection" afforded by the Tennessee statute in order to
secure or maintain employment. Instead, the federal leg-
islation now specifically outlaws discrimination on the
basis of disability in hiring, promotion, or other privileg-
es of employment. *See 42 U.S.C. § 12112(a).* Conse-
quently, to continue to condition employment of a quali-
fied individual with a pacemaker on the relinquishment
of that employee's workers' compensation rights is re-
pugnant to the ideals expressed in the broad, remedial
provisions of the ADA. The "Hobson's choice" offered to
Baker in this matter was, therefore, properly considered
an adverse employment action that established the third
element of the plaintiff's discrimination claim. [6]

> 6   If Baker were to choose not to forfeit any
> potential workers' compensation benefits, he
> faced the prospect of continuing on
> leave-without-pay status with Windsor Republic.
> As the United States Supreme Court held in *Bur-
> lington Northern and Santa Fe Railway Co. v.
> White, 548 U.S. 53, 71-72, 126 S. Ct. 2405, 165
> L. Ed. 2d 345 (2006)*, even a 37-day suspension
> without pay, followed by reinstatement and full
> backpay, is an adverse employment [**26] ac-
> tion that serves to chill the exercise of rights
> guaranteed by federal anti-discrimination statutes.

The final hurdle Baker faced in his attempt to make
out a claim of disability discrimination under the ADA
was the requirement of establishing that he was qualified
to perform the job he sought, with or without reasonable
accommodation. It was in this pursuit that the plaintiff's
quest was thwarted. Although the evidence [*774]
before this court supports Baker's assertion that he was
able to operate a forklift in Windsor Republic's plant, [7]
even the plaintiff concedes that the possibility of contact
with strong electromagnetic fields within the building

necessitated some accommodation of his physical condi-
tion.

> 7   The very fact that Baker was meeting his
> employer's expectations prior to the implantation
> of his pacemaker demonstrates that he was pre-
> viously qualified for his job. *See, e.g., Tysinger v.
> Police Dep't of Zanesville, 463 F.3d 569, 573
> (6th Cir. 2006).*

The district court held, however, that binding Sixth
Circuit precedent mandated "that a regarded-as disability
finding would obviate the [employer's] obligation to
reasonably accommodate [the plaintiff]," citing *Work-
man v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir.
1999).* [**27] *Baker, 2009 U.S. Dist. LEXIS 37176,
2009 WL 1231035, at *9.* This legal conclusion is shared
by a number of our sister circuits. *See, e.g., Kaplan v. N.
Las Vegas, 323 F.3d 1226, 1231-33 (9th Cir. 2003)*;
*Weber v. Strippit, Inc., 186 F.3d 907, 916-17 (8th Cir.
1999)*; *Newberry v. E. Tex. State Univ., 161 F.3d 276,
280 (5th Cir. 1998).* In determining that reasonable ac-
commodations need not be offered to employees who are
only "regarded as" disabled, other courts have suggested
that "[i]mposing liability on employers who fail to ac-
commodate non-disabled employees who are simply
regarded as disabled would lead to bizarre results." *We-
ber, 186 F.3d at 916.* The Eighth Circuit explained in
*Weber*:

> Assume, for instance, that Weber's
> heart condition prevented him from relo-
> cating to Akron but did not substantially
> limit any major life activity. Absent a
> perceived disability, defendants could
> terminate Weber without exposing them-
> selves to liability under the ADA. If the
> hypothetical is altered, however, such that
> defendants mistakenly perceive Weber's
> heart condition as substantially limiting
> one or more major life activities, defen-
> dants would be required to reasonably
> accommodate Weber's condition by, for
> instance, delaying [**28] his relocation
> to Akron. Although Weber's impairment
> is no more severe in this example than in
> the first, Weber would now be entitled to
> accommodations for a non-disabling im-
> pairment that no similarly situated em-
> ployees would enjoy.

*Id.*

Nevertheless, Baker asks us to adopt what he asserts
is the better-reasoned position espoused in several later

Page 9

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

cases by other circuits. For example, in *Kelly v. Metallics West, Inc., 410 F.3d 670, 676 (10th Cir. 2005)*, the Tenth Circuit discounted *Weber's* concern for possible "bizarre results" arising from requiring reasonable accommodations for individuals regarded as disabled. In calling for the provision of such accommodations, the court in *Kelly* explained:

> [A]n employer who is unable or unwilling to shed his or her stereotypic assumptions based on a faulty or prejudiced perception of an employee's abilities must be prepared to accommodate the artificial limitations created by his or her own faulty perceptions. In this sense, the ADA encourages employers to become more enlightened about their employees' capabilities, while protecting employees from employers whose attitudes remain mired in prejudice.

*Id.*

Likewise, in *D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1236 (11th Cir. 2005)*, [**29] the Eleventh Circuit noted that the explicit language used in the ADA definition of disability "simply offers no basis for differentiating among the three types of disabilities in determining which are entitled to a reasonable accommodation and which are not." *See also Williams v. Phila.* [*775] *Hous. Auth. Police Dep't, 380 F.3d 751, 773 (3d Cir. 2004)*; *Katz v. City Metal Co., 87 F.3d 26, 33 (1st Cir. 1996)*. Moreover, such a "straightforward reading of the ADA is altogether consistent with the Supreme Court's interpretation of a nearly identical provision of the Rehabilitation Act of 1973, *29 U.S.C. § 701 et seq.*, in *School Board of Nassau County. v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)*." *D'Angelo, 422 F.3d at 1236*.

Our opinion in *Workman* omits any analysis to substantiate the position that reasonable accommodations are not required in cases in which the plaintiff is only "regarded as" disabled. Instead, we cited *29 C.F.R. § 1630.2(/)(1)-(3)*, the regulation that merely elucidates the three methods by which an employee may be "regarded as having an impairment." Still, *Workman* is a prior, published decision of this court and thus binds subsequent panels addressing the [**30] same issues upon which the earlier panel announced a holding. *See, e.g., Salmi v. Sec'y of Health & Human Servs., 774 F.2d 685, 689 (6th Cir. 1985)* (only an *en banc* court may overrule circuit precedent absent an intervening Supreme Court decision).

Baker attempts to circumvent the "law of the circuit" impediment to his disability-discrimination claim by contending that *Workman's* reasonable-accommodation ban constituted *dicta*, not an actual holding of the court and, therefore, is not binding in this case. In light of the posture in which the *Workman* appeal was presented, however, this court's "regarded-as" ruling was integral to the ultimate decision in the case.

Although the jury in Workman's case was instructed on the three prongs of the ADA's definition of "disability," it was then asked the single question, "Did the defendant discriminate against the plaintiff by terminating her on the basis of her disability, in violation of the Americans with Disabilities Act?" *Workman, 165 F.3d at 465 n.2*. The fact-finders' answer of "yes" thus offered little insight into their decision-making process. Because on review the *Workman* court could not pinpoint the basis of the jury's decision on the [**31] ADA-discrimination issue, the discussion in its opinion of both the "actual-disability" prong and the "regarded-as-having-a-disability" prong were necessary to evaluate and decide the merits of the appeal. In other words, unable to determine whether the comments in *Workman* concerning "regarded-as" disability were indeed the basis for the court's decision, we cannot now discount them as *dicta* and ignore the precedential value of *Workman* in Baker's appeal.

Baker, however, grasps hold of one final argument in his attempt to reinstate the jury verdict in this case that found Windsor Republic liable for discrimination under the provisions of the ADA. In *Workman*, we suggested that "[i]f the jury credited Workman's testimony at trial, and the testimony of some Frito-Lay employees that temporarily replacing people on the line was regularly done (i.e., not a special accommodation), then they could have found for Workman under [the regarded-as] prong." *Id. at 467*. Baker now argues that he has established that Windsor Republic regularly provided accommodation to employees demonstrating any disability and, therefore, that such reasonable accommodation was due and owing to him as well.

The plaintiff, [**32] however, misreads the import of the relevant language in *Workman.* As the district judge concluded when ruling upon the parties' post-trial motions in this matter, *Workman* referenced a situation in which the employer "had a regular business practice of providing the specific accommodations that [the plaintiff] requested." *Baker, 2009 U.S. Dist. LEXIS 37176, 2009 WL 1231035, at* [*776] *11*. Windsor Republic, on the other hand, did not regularly offer the same accommodations that Baker requested. Whereas, in *Workman*, the "employer routinely allowed for temporary substitutions on the line" so that employees could use the restroom, Baker has adduced no evidence that Windsor

Page 10

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

Republic "previously allowed other employees to utilize an EMF alarm, in particular, to accommodate a pacemaker." *Id.* Because "[n]othing in [*Workman*] suggests that an employer's general policy of attempting to accommodate medical restrictions is sufficient to establish a regular business practice of accommodating all medical conditions," and "[b]ecause Baker presented no evidence that established [that Windsor Republic] previously permitted use of EMF alarms or other similar accommodations he had requested, the proof at trial was insufficient for a reasonable [**33] jury to find that the Defendant discriminated against him by denying him regular accommodations." *Id.* (footnote omitted).

Despite the lack of analytical support for *Workman's* assertion that a finding of "regarded-as" disability would obviate an employer's responsibility to offer reasonable accommodation to an employee, that holding remains the "law of the circuit" and binds this panel. The district court thus properly reversed the jury verdict in favor of Baker on the plaintiff's ADA-discrimination claim.

## Retaliation Claim

Challenging the jury's verdict in Baker's favor on the retaliation claim, Windsor Republic first submits that the district court erred in denying its motion for judgment as a matter of law. "We review a district court's refusal to grant a party's motion for judgment as a matter of law de novo." *In re Scrap Metal Antitrust Litig., 527 F.3d 517, 532 (6th Cir. 2008), cert. denied, 129 S. Ct. 1673, 173 L. Ed. 2d 1037 (2009).* Moreover:

> In a federal question case, the standard of review for a *Rule 50* motion based on the sufficiency of evidence is identical to that used by the district court. The evidence should not be weighed, and the credibility of the witnesses should not be questioned. The [**34] judgment of this court should not be substituted for that of the jury; instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences. The motion should be granted, and the district court reversed, only if reasonable minds could not come to a conclusion other than one favoring the movant. The district court must indulge all presumptions in favor of the validity of the jury's verdict, and should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result.

*Williams v. The Nashville Network [TNN], 132 F.3d 1123, 1130-31 (6th Cir. 1997)* (internal quotation marks and citations omitted). The defendant cannot satisfy that onerous burden in this case.

In order to prove ADA retaliation, Baker was required to establish "that [he] engaged in protected activity; that the exercise of [his] civil rights was known by the defendant; that defendant thereafter took adverse employment action; and that a causal connection exists between the protected activity and the adverse employment action." *Walborn v. Erie Cnty. Care Facility, 150 F.3d 584, 588-89 (6th Cir. 1998).* [**35] On appeal, Windsor Republic does not contest the fact that the plaintiff's request for accommodation was "protected activity" and that the defendant was aware of the exercise of that right. The company does contend, however, that it took no [*777] adverse action against Baker and that Baker cannot show a causal connection between the request for accommodation and any adverse action. [8]

> 8    Windsor Republic also argues that Baker never adduced evidence that he was able to return to work, with or without reasonable accommodations. According to the defendant, therefore, the plaintiff did not prove "disability" under the ADA. But as the district court correctly instructed the jury, to establish a retaliation claim the plaintiff need not prove he had a disability under the ADA. Rather, the protected act is the showing of a good-faith request for reasonable accommodations. *See, e.g., Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997)* ("An individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA.").

Baker asserts that he suffered an adverse employment action when Windsor Republic refused to allow him to return to work [**36] unless he signed a waiver of his rights to recover under state workers' compensation statutes for any aggravation of his heart condition. The defendant maintains that the offer of a waiver was not an adverse action because such a waiver is envisioned by legally-enacted state statutes.

Despite the effort by Windsor Republic to cast its actions in a positive light, a rational jury could conclude that the waiver request was indeed an adverse action. Trial testimony is clear that if Baker chose not to waive rights that no individual without a heart condition was required to waive, he would not be allowed to return to work for the defendant. In fact, Lawrence Land, the company's director of human resources, engaged in the following colloquy with Baker's lawyer:

Q Is it fair to say that as of June 2006, you did not give [Baker] the option of returning to work with the EMF alarm but without signing away his workers' compensation benefits?

A Sir, that's absolutely correct.

Q All right. And to this day, has he ever been given the option of returning to work with the EMF alarm but without signing away his workers' compensation benefits?

A Sir, I've not had any communication with Doug since June of   [**37] '06.

Q So he hasn't -

A Other than casually, I've had no communication with him.

Q So he hasn't been given that option from you; correct?

A Sir, I've not had any communication, so that would be correct.

Being forced to choose between forfeiting certain statutorily guaranteed rights or remaining on indefinite, unpaid leave-of-absence is indeed a dilemma that a rational finder-of-fact could conclude was adverse. And, for the reasons set forth above, Windsor Republic is not entitled to rely on *Tennessee Code Annotated § 50-6-307(b)*, enacted three decades before the ADA, in arguing to the contrary. Hence, we conclude that Baker established the third element of his retaliation claim.

Regardless of the plaintiff's success in demonstrating other elements of a retaliation cause of action, Windsor Republic insists that Baker cannot tie the company's alleged insistence on a waiver of workers' compensation benefits to Baker's request for reasonable accommodation. Again, the defendant fails to recognize the very limited role this court plays in evaluating the propriety of a jury verdict through the lens of a motion for judgment as a matter of law. Viewed with that gloss, it is not unreasonable for a   [**38] jury to conclude that the adverse employment action was precipitated by Baker's insistence on the company offering him some accommodation to   [*778]   allow him to continue working as a forklift operator.

Windsor Republic argues, however, that the company's insistence on a waiver of statutory rights before the plaintiff could resume work "was caused by the 'ambiguous and contradictory' responses from [Baker's] doctor and the Plaintiff's unresponsiveness to its

'attempts to engage in the interactive process.'" *Baker, 2009 U.S. Dist. LEXIS 37176, 2009 WL 1231035, at *14*. Responding to that assertion, the district court noted:

> Apparently, the jury ascribed more weight to other evidence, such as the temporal proximity between the Plaintiff's request for accommodation and the adverse employment action taken by the Defendant. The jury also could have made reasonable inferences based on the Defendant's failure to contact the manufacturer of the pacemaker, its failure to procure a qualified expert to render an opinion about alternatives, or the fact that it did not normally require its employees to waive their workers' compensation rights. The jury might have concluded that Land's conditioning Baker's return on waiver of his statutory   [**39] rights indicated that the Defendant subjectively considered Baker physically capable of performing his former duties, but it sought to deprive him of his workers' compensation rights in retaliation for requesting accommodation.

*Id.* Consequently, in light of those possibilities and our circumscribed standard of review at this stage of the proceedings, we will not overturn the jury's determination that Baker demonstrated the requisite causal connection between his request for accommodation and the adverse employment action.

Once a plaintiff establishes the elements of a retaliation claim, the burden shifts to the defendant "to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Sowards v. Loudon Cnty., Tenn., 203 F.3d 426, 431 (6th Cir. 2000)*. Windsor Republic, through the testimony of its director of human resources, satisfied this less-than-onerous burden by insisting that Baker would have been asked to sign the workers' compensation waiver in any event because of the company's concern for Baker's health and for the health of Baker's co-workers.

Faced with an employer's purported, non-retaliatory rationale for an   [**40] adverse employment action, the plaintiff in a retaliation case is afforded the opportunity "to show that the proffered reason was not its true reason but merely a pretext for retaliation." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010)*. To do so, a plaintiff may demonstrate that the proffered reason "(1) had no basis in

fact, (2) did not actually motivate the employer's action, or (3) [was] insufficient to motivate the employer's action." *Id. at 486* (citing *Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994))*. To prevail ultimately, however, the plaintiff must show "*both* that the reason was false, *and* that discrimination [or retaliation] was the real reason." *Harris, 594 F.3d at 486* (emphasis and brackets in original) (quoting *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993))*.

Baker has done so easily in this case. The idea that Windsor Republic's requirement that the plaintiff waive his workers' compensation benefits in order to return to work was developed out of concern for Baker's health borders on the ludicrous. A reasonable jury could find that the employer's stated rationale for its action had absolutely [**41] no basis in fact and that the true motivation for the action was to save the company medical payments from its [*779] self-insured workers' compensation plan. Bound as we are by the restrictive review standard applicable to post-trial challenges such as this, we cannot say that the jury improperly determined that retaliation, and not concern for Baker's health, was the true reason for requiring the waiver of workers' compensation benefits before allowing the plaintiff to return to work. The district court thus correctly denied Windsor Republic's motion for judgment as a matter of law on the plaintiff's retaliation cause of action.

Windsor Republic also contends that, if we do not direct the entry of judgment as a matter of law in its favor, we should nevertheless order a new trial on Baker's retaliation claim. In support of its allegation, the defendant surmises that the jury must have been confused in its deliberations because the district court improperly permitted the jury to consider a discrimination claim that was unavailable to the plaintiff under Sixth Circuit precedent. Nevertheless, the jury was properly instructed on the law applicable to the *retaliation* claim, and Windsor Republic [**42] cannot substantiate its belief that the fact-finders must have been confused about that aspect of the litigation.

Finally, Windsor Republic contends that the jury improperly awarded compensatory damages to the plaintiff in this ADA-retaliation suit. To support its position, the defendant cites cases from other jurisdictions that have held that such damages are not available under the statutory scheme set up by Congress. *See Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1268-70 (9th Cir. 2009)*; *Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004)*. The EEOC, appearing as an *amicus curiae*, and Baker argue in opposition, citing other circuit court decisions that have affirmed awards of compensatory and/or punitive damages in ADA-retaliation suits. *See Salitros v. Chrysler Corp., 306 F.3d 562, 574-76*

*(8th Cir. 2002)*; *Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196-98 (8th Cir. 2001)*; *EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1246 (10th Cir. 1999)*; *Muller v. Costello, 187 F.3d 298, 314-15 (2d Cir. 1999)*.

Despite the time and effort expended by the parties and by the EEOC in briefing this issue, we need not address it in this appeal. In its verdict, the jury explicitly [**43] found that Windsor Republic "retaliated against Plaintiff under the ADA/THA as defined by these instructions." Consequently, in addition to the ADA, the award of damages to Baker was predicated on the Tennessee Handicap Act, a determination that Windsor Republic does not challenge on appeal. Thus, even if compensatory damages are not allowed in ADA-retaliation suits, the jury's decision to award such monetary relief can be approved if the Tennessee statute so permits.

The THA outlaws discrimination in employment and accords to plaintiffs under the act "all the rights provided" in *sections 4-21-302 through 4-21-311 of the Tennessee Code Annotated.* [9] *See Tenn. Code Ann. § 8-50-103(b)(2).* [10] Those sections of Title 4, in turn, provide recourse for individuals "aggrieved by a discriminatory practice," *see Tenn. Code Ann. § 4-21-302(a)*, a term defined to include "[r]etaliat[ion] or discriminat[ion] in any manner against a person because such person has . . . made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter." *Tenn. Code Ann. § 4-21-301(1)*. Furthermore, as remedies for any forbidden retaliation [**44] or [*780] discrimination, Tennessee law provides for administrative assessments of "damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice, and cost, including a reasonable attorney's fee," *Tenn. Code Ann. § 4-21-306(a)(7)*, and for judicial determinations of "actual damages . . . , together with the costs of the lawsuit, including a reasonable fee for the plaintiff's attorney of record," *Tenn. Code Ann. § 4-21-311 (b)*.

> 9    The referenced sections are part of the Tennessee Human Rights Act.
> 10    Effective April 7, 2008, *§ 8-50-103(b)(2)* was re-designated as *§ 8-50-103(c)(2)*. *See* 2008 Tenn. Pub. Acts, ch. 706, § 6.

Thus, one of the two alternative bases for the jury's award of compensatory damages in this case was not only unchallenged by Windsor Republic, but also clearly provides justification for the monetary damages assessed against the defendant. *Section 12201(b)* of Title 42, moreover, explicitly states:

> Nothing in this chapter shall be construed to invalidate or limit the remedies,

Page 13

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

rights, and procedures of any Federal law *or law of any State* or political subdivision of any State or jurisdiction *that provides greater or equal protection for the rights* [**45] *of individuals with disabilities than are afforded by this chapter.*

(Emphasis added.) As a result, we need not address Windsor Republic's argument that the language of the ADA does not also envision a compensatory-damage award upon a finding of retaliation under the federal statute.

**Attorneys' Fees**

Pursuant to the provisions of *42 U.S.C. § 12205*, a court presiding over an ADA action "may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." Windsor Republic now maintains that because it prevailed in its effort to overturn the jury's verdict in Baker's ADA-discrimination cause of action, the district court erred in denying the defendant's request to have its legal counsel compensated by the plaintiff for their work in that regard.

A district court should award such fees to a prevailing defendant in a civil rights action only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978)*. We review the decision whether to order the payment of attorneys' fees to a successful [**46] defendant for an abuse of discretion. *See, e.g., Riley v. Kurtz, 361 F.3d 906, 910 (6th Cir. 2004)*.

Despite the defendant's contentions to the contrary, the district court did not abuse its discretion in this matter by concluding that Baker's ADA-discrimination claim was not so frivolous, unreasonable, or without foundation as to justify imposition of fee sanctions on the plaintiff. It is true that the district judge eventually overturned the jury's verdict on Baker's discrimination claim when he realized that circuit precedent foreclosed consideration of reasonable accommodations in situations in which an employee is only "regarded as," but is not actually, disabled. Nevertheless, even were this court to conclude that circuit precedent is well-established in this regard, Baker's claim under the ADA was not without foundation. As we have previously noted, a legitimate issue regarding the weight to be given to the relevant language in *Workman* existed, and Baker's legal counsel cannot be faulted for seeking to take advantage of a seeming ambiguity in this court's previous decision.

"An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, [**47] and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp., 789 F.2d 1225, 1232 (6th Cir. 1986)*. The actions of plaintiff's [*781] counsel in this case do not come close to that line of impropriety. The district judge thus did not abuse his discretion in refusing to award attorneys' fees to Windsor Republic's counsel.

Nor do we find any merit in Windsor Republic's contention that the district court erred in awarding attorneys' fees to plaintiff's counsel at 120 percent of the calculated lodestar amount. Windsor Republic now maintains that such an award should be reduced because, given reversal of the jury's verdict on the plaintiff's reasonable-accommodation claim, plaintiff's counsel did not prevail on each cause of action and, thus, did not obtain "exceptional success" or "exemplary results." Again, our review of the fee award is limited to evaluating the district judge's actions for an abuse of discretion. *See, e.g., Cramblit v. Fikse, 33 F.3d 633, 634 (6th Cir. 1994)*.

There is no dispute that Baker ultimately did not prevail on one of his two causes of action in this litigation. Nevertheless, the relief that the plaintiff received was not affected by the district [**48] court's grant of judgment as a matter of law to the defendant on the reasonable-accommodation claim. Both before and after that ruling, Baker received full back pay, front pay, and compensatory damages. Because the plaintiff still obtained exactly the relief he sought, even after the district court's partial grant of Windsor Republic's motion for judgment as a matter of law, we cannot say that the district judge abused his discretion in denying the defendant's request to reduce the attorneys' fees awarded the plaintiff.

Lastly, Windsor Republic raises a challenge to the propriety of an award of supplemental attorneys' fees to the plaintiff. After the defendant filed his initial appeal to this court, the district judge ruled that plaintiff's counsel were entitled to an additional $27,532.50 for legal work performed on post-trial motions and post-trial hearings. Again, Windsor Republic asserts that the fee award is improper because Baker did not prevail on all of his post-trial motions. In fact, maintains the defendant, the district judge actually overturned one portion of the jury verdict to the plaintiff's detriment.

For multiple reasons, Windsor Republic's appellate argument in this [**49] regard cannot prevail. First, the defendant never responded in the district court to Baker's claim for supplemental attorneys' fees prior to filing this appeal. Second, upon referring the fee request to a magistrate judge, the district court noted:

Page 14

414 Fed. Appx. 764, *; 2011 U.S. App. LEXIS 4810, **;
2011 FED App. 0136N (6th Cir.); 24 Am. Disabilities Cas. (BNA) 791

Any objections to the magistrate judge's order shall be made within ten (10) days after service of the order, setting forth particularly those portions of the order objected to and the reasons for the objections. Failure to timely assign as error a defect in the magistrate judge's order will constitute a waiver of that objection.

Still, the defendant failed to identify any error in the magistrate judge's ruling or raise any timely objection whatsoever. "The law in the Circuit is clear" that a litigant forfeits the right to appeal the district court's ruling on a motion "by failing to object to the magistrate judge's report and recommendation." *United States v. Branch, 537 F.3d 582, 587 (6th Cir. 2008).*

Third, even if we were to address the substance of Windsor Republic's challenge, the argument put forth by the defendant is without merit. In fact, the objection to the supplemental attorneys' fee award is the same argument that we have already  [**50] rejected--that Baker

cannot receive attorneys' fees because he did not prevail on every aspect of every cause of action raised in his complaint. Again, however, the plaintiff received exactly the relief he sought, and the overturning of the jury's verdict on the reasonable-accommodation  [*782] claim did nothing to diminish the ultimate benefit received by Baker. [11]

11 In his response to Windsor Republic's argument regarding the supplemental attorneys' fee award, Baker also requests additional attorneys' fees "for responding to this appeal either as the 'prevailing party' or because [Windsor Republic's] appeal meets the standard for frivolousness." Given the interrelated nature of these three appeals and our consolidation of them, we deny that request.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgments entered by the district court in these three consolidated appeals.