# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CATHERINE A. COFFMAN,⁣ )
⁣ )
    Plaintiff,⁣ )
⁣ )
v.⁣ )⁣    Case No. 3:10-cv-01052
⁣ )⁣    JUDGE HAYNES
ROBERT J. YOUNG COMPANY, INC.,⁣ )
⁣ )
    Defendant.⁣ )

## MEMORANDUM

Plaintiff, Catherine A. Coffman, filed this action under the Tennessee Public Protection

Act, ("TPPA"), Tenn. Code Ann. § 50-1-304, the Tennessee Disability Act, ("TDA"), Tenn.

Code Ann. § 8-50-103,[1] the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101 et

seq., as amended by the ADA Amendments Act of 2008 ("ADAAA"), and Tennessee common

law against Defendant Robert J. Young Company, Inc., her former employer.[2]  Plaintiff asserts

that Defendant terminated her on the basis of her disability or perceived disability and terminated

Plaintiff in retaliation for engaging in protected activity under state and federal law.

Before the Court are Defendant's motion for summary judgment (Docket Entry No. 33)

and Plaintiff's motion for partial summary judgment (Docket Entry No. 36).  In its motion,

Defendant contends, in sum: (1) that Plaintiff cannot establish that she was a qualified individual

under the ADA who could perform the essential functions of her employment; (2) that Plaintiff

cannot show she was discharged solely because of her disability; and (3) that Defendant had a

legitimate, non-discriminatory reason for terminating Plaintiff's employment.  In response

---

[1] The TDA was formerly known as the Tennessee Handicap Act, but was amended, effective
April 7, 2008.  See Tenn. Code Ann. § 8-50-103(a) (2008).

[2] Plaintiff's claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §
2601, et seq. were dismissed by the Court.  (Docket Entry No. 27).

(Docket Entry No. 42), Plaintiffs asserts that Defendant fails to address her "perceived as disabled" ADA claim, in addition to her failure to accommodate claim, her retaliation claims, and her TDA claim. Plaintiff also asserts that she has presented direct evidence of discrimination and that Plaintiff's ADA claim does not warrant dismissal because Fed. R. Civ. P. 8(a)(3), (d)(2), (3) and (e) permits alternative pleading.

In her motion for summary judgment, Plaintiff contends, in essence, that she has presented direct evidence of discrimination under the ADA and TDA and that Defendant cannot demonstrate business necessity or undue hardship, and that Defendant retaliated against her under the ADA, TPPA, and Tennessee common law. In response (Docket Entry No. 44), Defendant asserts that Plaintiff cannot establish that she was a qualified individual that could perform the essential functions of her employment under the ADA, Plaintiff cannot show she was discharged solely because of her disability, and Plaintiff fails to show a causal connection or retaliatory motive for her termination.

For the reasons set forth below, the Court concludes that Plaintiff's motion for partial summary judgment (Docket Entry No. 36) should be granted in part as to her ADA and retaliation claims. Plaintiff's motion for partial summary judgment should be denied as to her TDA claim. The Court concludes that Defendant's motion for summary judgment (Docket Entry No. 33) should be denied.[3]

---

[3] In the Defendant's motion for summary judgment, Defendant moves for summary judgment "in its favor as to all remaining counts alleged in the First Amended Complaint." (Docket Entry No. 33 at 1). Yet, in its memorandum in support of its motion for summary judgment, Defendant only presents arguments regarding Plaintiff's ADA claim. Because the Defendant does not address Plaintiff's remaining claims, the Court concludes that that these claims survive summary judgment.

# I.  FINDINGS OF FACT[4]

Plaintiff began working for Defendant in 1994.  (Docket Entry No. 45, Defendant's Response to Plaintiff's Statement of Facts, at ¶ 1).  Plaintiff worked as a DMS[5] copy center operator at Earl Swensson, an engineering firm, from 1999 to her termination in 2009.  Id. at ¶ 2. As part of her job at Earl Swensson, Plaintiff provided customer service, made copies, assisted with and repaired machines, kept machines stocked with toner and paper, made booklets, printed documents and scanned documents.  Id. at ¶ 3.  To date, Defendant has a contract to provide services at Earl Swensson.  Id. at ¶ 4.

During her employment, Plaintiff was Defendant's only employee permanently assigned to Earl Swensson.  Other employees worked at Earl Swensson as needed, including when Plaintiff took time off from work.  Id. at ¶ 5.  Defendant has another employee fill in when a DMS copy center operator takes time off.  Id. at  ¶ 6.

On April 25, 2009, Plaintiff was in an off duty motorcycle accident.  Id. at ¶ 8.  Plaintiff was treated at Vanderbilt University Medical Center for a concussion, injury to her left shoulder, broken collarbone, broken ribs and road rash.  Id.  As a result of the road rash, Plaintiff got a staph infection that delayed the surgery to repair her collarbone by approximately one month.  Id. at ¶ 9.  Plaintiff had surgery on May 27, 2009 and began physical therapy approximately two and

---

[4] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment.  Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).  As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes on these motions, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

[5] Document Management Services. (Docket Entry No. 39, Kerry Crotts Deposition at p. 44).

a half months later. (Docket Entry No. 40, Plaintiff Deposition at p. 75). Plaintiff's physical therapy was two to three times per week and required that she take pain medication that affected her driving ability. Id. Following the accident, Plaintiff received twelve weeks of leave under the FMLA. Id. at p. 51. While on medical leave, Plaintiff's position was covered by other Defendant employees. (Docket Entry No. 45, at ¶ 14). Plaintiff's position was not eliminated because of Defendant's contractual obligation to Earl Swensson to keep the position filled. Id.

Plaintiff provided Defendant regular notes as to her medical status and complied with Defendant's policies on providing medical documentation. Id. at ¶ 12. On or about July 27, 2009, at the end of Plaintiff's FMLA leave, Plaintiff informed Defendant that she was only able to use one hand or one arm. (Docket Entry No. 40, Plaintiff Deposition at p. 52). In response, Defendant offered to return Plaintiff to work in a sedentary job that provided the same pay and benefits as her position as DMS copy center operator. (Docket Entry No. 45, at ¶ 11; Docket Entry No. 40, Plaintiff Deposition at p. 52). Plaintiff, however, declined the sedentary job because she did not feel physically or mentally capable of performing the job. Id.

On October 28, 2009, Plaintiff provided Defendant a note stating that she would be able to return to work on November 23, 2009 with minimal restrictions of no lifting more than 10 pounds, limited overhead and limited pushing/pulling. (Docket Entry No. 45, at ¶ 16). Plaintiff believed that she could perform her duties as a DMS copy center operator without assistance in accordance with the aforementioned restrictions. (Docket Entry No. 40, Plaintiff Deposition at pp. 78-79).

Kerry Crotts, Defendant's Human Resources Director, and Ralph Mello, Defendant's general counsel, decided to terminate Plaintiff. (Docket Entry No. 45, at ¶ 20). Prior to her termination, Mello and Crotts did not discuss with Plaintiff her impairments, condition or

intentions to return to work on November 23, 2009. Id. at ¶ 21. Crotts did not discuss or conduct an interactive process with Plaintiff to determine whether any of Plaintiff's job functions could be accommodated. Id. at ¶ 22. Nor did Crotts request additional medical information from her healthcare providers or consult an occupational physician to determine whether Plaintiff would be able to perform her job duties. Id. at ¶ 31. Defendant did not consider offering Plaintiff additional leave from October 28, 2009 to November 23, 2009 as a reasonable accommodation. Id. at ¶ 32.

On November 10, 2009, Plaintiff received a termination letter that stated "given [that] you are unable to perform the tasks of your job, we have found it necessary to hire someone to fill the vacancy created by your need to take long term disability" and "[d]ue to your long term disability we must terminate your employment." Id. at ¶ 25. Plaintiff immediately filed for unemployment. Id. at ¶ 26. Plaintiff's separation notice submitted by Defendant to the Tennessee Department of Labor stated, "Employee has been on long term disability, unable to perform duties of the job." Id. In response to the Tennessee Department of Labor's inquiry concerning Plaintiff's application for unemployment, Defendant acknowledged that Plaintiff provided a statement showing necessity for leaving work and concluded that Plaintiff's condition resulted in a physical disability. Id. at ¶ 27.

The description of Plaintiff's job as a DMS copy center operator did not categorize its duties into essential and nonessential functions. Id. at ¶ 29. Crotts was unaware that a breakdown of Plaintiff's job functions into essential and nonessential functions was critical to an accommodation analysis. Id. Crotts acknowledged that the job's lifting requirements could have been modified and that allowing Plaintiff to remain employed until November 23, 2009 would not have been a hardship. Id. at ¶¶ 30, 33.

In February 2010, Plaintiff's doctor fully released her from any restrictions. Id. at ¶ 40.

## II.     CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations

omitted). Yet, "we find no express or implied requirement in Rule 56 that the moving party

support its motion with affidavits or other similar materials **negating** the opponent's claim."

Celotex, 477 U.S. at 323.

A motion for summary judgment is to be considered after adequate time for discovery.

Id. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the

motion must make an affirmative showing of the need for additional discovery after the filing of

a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir.

1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the

required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any," which
> it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e
> find no express or implied requirement in Rule 56 that the moving party support
> its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying

Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving

party's burden is to show "clearly and convincingly" the absence of any genuine issues of

material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting

Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant

has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the

nonmoving party then `must set forth specific facts showing that there is a genuine issue for

trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

8

there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation

omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must

be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791

F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a

summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court

9

requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given

some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing

of undisputed and disputed facts. Local Rule 56.01(b) provides as follows:

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions,

and other authorities on summary judgment and synthesized ten rules in the "new era" on

summary judgment motions:

1.  Complex cases are not necessarily inappropriate for summary judgment.

2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.  As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.     The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.     The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities.  42 U.S.C. § 12101.  The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas.  Id.  Thus, the ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was either denied a reasonable accommodation for her disability or she suffered an adverse employment action solely because of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996); Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff may prove that she was discriminated against based upon her disability either through direct or indirect evidence. Monette, 90 F.3d at 1178.

The Sixth Circuit has stated that where a plaintiff presents direct evidence of disability discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (quoting Monette, 90 F.3d at 1186).

However, where a plaintiff seeks to establish discrimination through indirect evidence, courts employ the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting approach so that the

> plaintiff may establish a prima facie case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

Hedrick, 355 F.3d at 453 (quoting Monette, at 1186-87); Torok v. Gibralter Veterinary Hosp., Inc., 442 F. Supp.2d 438, 457 (E.D. Mich. 2006) ("Whether Plaintiff proceeds under the 'direct evidence' or the McDonnell Douglas burden-shifting mode of analysis, she cannot succeed on an ADA claim of disability discrimination absent a showing that she is 'disabled' within the meaning of the statute."). "'[T]he direct evidence and circumstantial evidence paths are mutually exclusive, a plaintiff need only prove one or the other, not both.'" Id. (quoting Kline v. Tennessee Valley Authority, 287 F.3d 337, 348-49 (6th Cir. 2004)).

An individual is disabled under the ADA if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). An individual is regarded as having an impairment where the individual is

13

subjected to discrimination "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The "regarded as" theory does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). The definition of "disability" is "construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Thus, "[a]n impairment that substantially limits one major life activity need not limit other major life in order to be considered a disability." 42 U.S.C. § 12102(4)(C). Further, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

## A. ADA CLAIM

### 1. Direct Evidence

"Direct evidence is evidence that 'if believed, requires the conclusion that unlawful discrimination was at least a motivating factor' in the adverse employment action." Erwin v. Potter, 79 Fed. Appx. 893, 896 (6th Cir. 2003) (quoting Bartlik v. U.S. Dep't of Labor, 73 F.3d 100, 103 n.5 (6th Cir. 1996)). When direct evidence is presented, "no inference is necessary to conclude that the employee has proven this form of discrimination." Kleiber v. Honda of America Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007). "[D]irect evidence might 'take the form, for example, of an employer telling an employee, I fired you because you are disabled.'" Burress v. City of Franklin, Tenn., 809 F.Supp. 2d 795, 810 (M.D. Tenn. 2011) (quoting Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998)).

Here, Plaintiff cites as direct evidence of disability discrimination: Plaintiff's termination letter stating the Plaintiff was terminated due to her long term disability (Docket Entry No. 37-2); Crotts's deposition testimony that Plaintiff was terminated based on Defendant's perception that Plaintiff would not or could not come to work (Docket Entry No. 39, Crotts Deposition, at p. 69);

and Mello's deposition testimony that "you either can work or you're receiving long-term disability benefits which say I can't work, I need long-term disability benefits." (Docket Entry No. 41, Mello Deposition, at p.18).

The Court concludes that Plaintiff's termination letter constitutes direct evidence of discrimination as a reasonable jury could find that Defendant's decision to terminate Plaintiff was motivated, at least in part, by Plaintiff's disability or perceived disability. See Burress, 809 F.Supp. 2d at 811 (reasoning that supervisor's letter noting that Plaintiff was receiving long-term disability benefits and terminating Plaintiff for inability to perform essential functions of job was direct evidence of discrimination). Thus, Defendant's motion for summary judgment on Plaintiff's ADA claim should be denied and Plaintiff's partial motion for summary judgment on her ADA claim should be granted. Nonetheless, the Court assesses Plaintiff's reliance on indirect evidence.

### 2. Indirect Evidence

As for Plaintiff's indirect evidence of disability discrimination, Defendant only challenges the second prong of Plaintiff's prima facie case of discrimination, that she is "otherwise qualified." Thus, for the purposes of deciding Defendant's motion for summary judgment the Court will assume the other few prongs of Plaintiff's prima facie case have been met.

Defendant contends that Plaintiff was not an "otherwise qualified" individual at the time of her termination because she either could not, or would not, show up for work, an essential function of her job, and that she rejected a reasonable accommodation. "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or

desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).

Plaintiff asserts that she could have performed the essential functions of her job with the reasonable accommodation of additional unpaid leave. "A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.' An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship." Hedrick, 355 F.3d at 457 (citations omitted).

Sixth Circuit case law establishes that providing unpaid medical leave can qualify as a reasonable accommodation." Burress, 809 F.Supp. 2d at 812 (citing Cehrs v. Ne. Ohio Alzheimer's Research Ctr., 155 F.3d 775, 783 (6th Cir.1998)). Defendant's leave policy similarly indicates that an unpaid leave of absence can be a reasonable accommodation and may be afforded "on a case-by-case basis. . ." (Docket Entry No. 37-3).

Defendant has not shown that providing Plaintiff additional unpaid leave would have caused it an undue burden. See Cehrs, 155 F.3d at 781 (listing the factors in 42 U.S.C. § 12111(10)(B) that courts must consider when considering undue hardship). Though Defendant contends that Plaintiff's absence created a hardship because it had to find a replacement for Plaintiff, the following passages from Kerry Crotts' deposition testimony reflects the lack of any hardship for Defendant to provide additional leave to Plaintiff:

> Q: Okay, Well, would it have been a hardship on RJ Young to allow her [Plaintiff] to stay on as an employee until November 23rd?
>
> A: No. No.
>
> Q: And at no point did you discuss additional leave as an accommodation?

A:      No.

Q:      Did you consider the impact of the financial resources of RJ Young in determining whether to allow her additional time to come back on November 23rd?

A:      No.

Q:      Did you consider the overall financial resources of RJ Young in determining whether to allow Ms. Coffman until November 23rd to come back?

A:      No.

Q:      Did you consider the impact on the center where she worked to allow her the additional time until November 23rd to come back?

A:      No.

Q:      . . . When you decided not to allow Cathy Coffman until November 23rd to return to work, at any time in that decision-making process, did you make an assessment as to whether or not that would have caused difficulty or expense to RJ Young?

A:      No.

Q:      Did you engage in interactive conversation with Ms. Coffman on or after October 28th, 2009 to determine what, if any accommodation Ms. Coffman needed when she requested to return to work— on November 23rd?

A:      No.

Q:      I'm asking you if RJ Young considered whether it would be a reasonable accommodation to extend her leave to November 23rd specifically?
A:      No.

(Docket Entry No. 39, Crotts Deposition at pp. 108-09, 114, 116, 117, 129-30, 132).

Because Plaintiff has presented evidence that she could have returned to work with a reasonable accommodation of additional leave, the Court concludes that a reasonable jury could conclude that Plaintiff was a qualified individual with a reasonable accommodation.[6]

As to Plaintiff's rejection of the position Defendant offered her in July 2009, Plaintiff asserts that she was mentally and physically unable to work at the time the job was offered. (Docket Entry No. 40 at p. 51). "It is well-settled that 'an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided.'" Keever v. City of Middletown, 145 F.3d 809, 812 (6th Cir. 1998). "[A]lthough an employee is not required to accept an offered accommodation, if an individual rejects a reasonable accommodation, the individual will no longer be considered a qualified individual with a disability." Hedrick, 355 F.3d at 457.

Defendant cites notes from Plaintiff's doctor indicating that Plaintiff was capable of returning to work on July 27, 2009 with prescribed limitations, but that she wanted to extend her disability a few more months and not return to work. Plaintiff contends that these doctor's notes were not in Defendant's possession when it terminated Plaintiff's employment and constitute hearsay evidence.

"[H]earsay evidence cannot be considered on a motion for summary judgment." Wiley v. U.S., 20 F.3d 222, 226 (6th Cir. 1994) (citing Daily Press, Inc. v. United Press Int'l, 412 F.2d

---

[6] In support of its argument, Defendant cites Brenneman v. MedCentral Health System, 366 F.3d 412 (6th Cir. 2004), in which the Sixth Circuit found that a plaintiff was unqualified due to his excessive absenteeism. The Court concludes that the facts of Brenneman are distinguishable from those in this action. In Brenneman, the defendant presented evidence that the plaintiff had substantial attendance deficiencies throughout the course of his employment that caused an undue burden. Brenneman, 366 F.3d at 418-20. Here, Defendant appeared to have been pleased with Plaintiff's work prior to her injury and does not assert that additional leave would have imposed an undue hardship.

126, 133 (6th Cir.), cert. denied, 396 U.S. 990 (1969)). "If a party fails to object . . . to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived . . ." Id. at 225-26.

Here, the medical records relied upon by Defendant are out-of-court statements introduced for the truth of the matter asserted. They therefore constitute hearsay and are inadmissible unless an exception to the hearsay rule applies. Fed. R. Evid. 801(c). Although the records might fall under the business records exception, Defendant has not provided an affidavit authenticating the records as required by Fed. R. Evid. 803(6) and 902(11). Accordingly, the Court does not consider the medical records and concludes that Plaintiff was otherwise qualified for her position with the reasonable accommodation of additional medical leave.

Having established a prima facie case of discrimination, the burden shifts to Defendant to offer a legitimate explanation for terminating Plaintiff. Defendant contends that it terminated Plaintiff because she either could not, or would not, show up for work, an essential function of her job. Defendant further contends that Plaintiff is unable to present evidence demonstrating that Defendant's stated explanation is false or pretextual.

"[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009) (citing Hedrick, 355 F.3d at 460). The Court concludes that Plaintiff's termination letter is sufficient for a jury to reasonably conclude that Defendant's proffered reason to terminate Plaintiff was not legitimate.

As to Defendant's argument that Plaintiff cannot show she was discharged solely by reason of her disability because her Amended Complaint alleges that Defendant terminated her employment for asserting her rights under the FMLA, TDA and ADA, the Court finds that Defendant misrepresents the Sixth Circuit's "solely" standard. Under Fed. R. Civ. P. 8(e)(2), parties may "set forth two or more statements of a claim or defense alternately or hypothetically," and "state as many separate claims or defenses as the party has regardless of consistency." Fed. R. Civ. P. 8(e)(2). The Court concludes that Plaintiff's allegations under the FMLA and TDA are merely alternative theories of liability and do not conflict with the Sixth Circuit "solely" standard. See Burress, 809 F.Supp.2d at 800 (upholding ADA discrimination and retaliation claims).

Thus, the Court concludes that Defendant's motion for summary judgment on Plaintiff's ADA claim should be denied and Plaintiff's motion for partial summary judgment on her ADA claim should be granted.

## B. TDA CLAIM

Tennessee courts utilize federal law for guidance on state disability discrimination claims. Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn.2000); Nance v. Goodyear Tire & Rubber, Co., 527 F.3d 539, 553 n.5 (6th Cir. 2008) ("Both federal and Tennessee disability discrimination actions require the same analysis."). The TDA, however, does not contain a reasonable accommodation component. Roberson v. Cendant Travel Servs., Inc., 252 F.Supp.2d 573, 683 (M.D. Tenn. 2002). Because Plaintiff's disability discrimination claim is premised upon her being otherwise qualified with the proposed reasonable accommodation of additional leave, the Court concludes that Plaintiff's TDA claim fails as a matter of law.

20

Thus, Plaintiff's motion for partial summary judgment should be denied as to her TDA claim.

## C. RETALIATION CLAIM

Plaintiff asserts that Defendant retaliated against her by terminating her employment for requesting a reasonable accommodation under the ADA. To state a claim for disability-retaliation under the ADA, Plaintiff must prove the following: "that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." Bryson v. Regis Corp., 498 F.3d 561, 577 (6th Cir. 2007). Defendant asserts that Plaintiff has not alleged any facts showing a causal connection to or a retaliatory motive for her termination.

To establish the requisite causal connection under the third prong, Plaintiff must submit "evidence 'sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'" EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir.1997) (citing Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir.1990)). Here, Plaintiff cites her termination letter as evidence of retaliation. The Court concludes that Plaintiff's termination letter is sufficient to create an inference of causation. Thus, the Court concludes that Plaintiff's motion for summary judgment on her retaliation claim under the ADA should be granted.

To prevail under the TPPA, "the plaintiff must establish (1) his status as an employee of the defendant employer; (2) his refusal to participate in, or remain silent about, 'illegal activities' as defined under the Act; (3) his termination; and (4) an exclusive causal relationship between his refusal to participate in or remain silent about illegal activities and his termination." Franklin v. Swift Transpo. Co., Inc., 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). To prove a common

law retaliatory discharge claim, "the plaintiff must show (1) that an employment-at-will relationship existed; (2) that he was discharged; (3) that the reason for his discharge was that he attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge him was his exercise of protected rights or his compliance with clear public policy." Id.

The Court concludes that Plaintiff's motion for summary judgment on her retaliation claims under the TPPA and common law should be granted for the same reasons as Plaintiff's retaliation claim under the ADA.

## III.   CONCLUSION

Accordingly, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 33) should be denied.  The Court further concludes that Plaintiff's motion for partial summary judgment (Docket Entry No. 36) should be granted as to her claim of disability discrimination under the ADA and retaliation claims and denied as to her claim of disability discrimination under the TDA.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of May, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge